IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| BILLIE G. KELEHEAR, SR., | ) | Civil Action No. 3:06-2811-CMC-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In July 2004, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held April 15, 2006, at which Plaintiff appeared and testified, the ALJ issued a decision dated June 20, 2006, denying benefits, finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was fifty-nine years old at the time of the ALJ's decision. He completed the sixth grade, but later earned his GED, and subsequently attended the police academy and truck driving school. His past relevant work was in law enforcement and truck driving. Plaintiff alleges disability since December 30, 2002, due to coronary artery disease, cervical diskectomy with fusion,

post-surgical radiculopathy, triple bypass heart surgery, coronary artery stent placement, hypertension, hyperlipidemia, depression, and post-traumatic stress disorder.

The ALJ found (Tr. 17-23):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b)( and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease with coronary artery bypass grafting, stent placement, mitral valve repair and status-post cervical spine surgery (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity of no lifting/carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over six hours in an eight-hour workday; no climbing of ladders or scaffolds; and in an environment free from extremes of temperature.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 25, 1946, and was 56 years old on the alleged disability onset date, which is defined as advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are readily transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566 and 404. 1568(d)).

11. The claimant has not been under a "disability," as defined in the Social Security Act, at any time from December 30, 2002, through the date of this decision (20 CFR 404.1520(g)).

On September 26, 2006, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on October 10, 2006.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

**DISCUSSION**

On December 30, 2002 (Plaintiff's alleged onset of disability date) Plaintiff was involved in a motor vehicle accident, which resulted in the death of the driver of the other vehicle. Tr. 117. On March 28, 2003, Plaintiff complained of neck and arm pain to Andrew H. Rhea, a neurosurgeon. Dr. Rhea, after examining Plaintiff and reviewing MRI scans, recommended that Plaintiff undergo

a cervical disc excision and fusion at C6-7. Tr. 118-119. This surgery was performed on May 7, 2003. Tr. 106-107. On July 10, 2003, Dr. Rhea noted that Plaintiff had full strength in both upper extremities; his cervical incision was well healed; and he had modest neck pain (improved with physical therapy). Tr. 112. On August 18, 2003, Dr. Rhea released Plaintiff to full duty work with no restrictions. Tr. 111. On October 23, 2003, Dr. Rhea opined that Plaintiff had reached maximum medical improvement as to his cervical spine injury and stated that Plaintiff had no work restrictions. Dr. Rhea opined that Plaintiff had a 20% impairment to his cervical spine. Tr. 110.

Beginning in March 2003, Plaintiff was treated by Dr. Avie J. Rainwater, III, a psychiatrist, and Dr. Sheryl Cantey, a psychologist, for mental impairments. Plaintiff was prescribed medication and underwent biofeedback-assisted relation therapy. On September 2, 2003, Dr. Rainwater released Plaintiff from biofeedback treatment because Plaintiff could remain relaxed and induce relaxation under stress, specifically while driving. Dr. Rainwater also opined that Plaintiff was at maximum psychophysiological benefit. Tr. 132. On March 16, 2004, Dr. Cantey completed an assessment of Plaintiff's mental functioning. Dr. Cantey stated that Plaintiff had been treated since March 2003 on a bi-weekly basis and reached maximum psychological improvement on March 2, 2004. She diagnosed Plaintiff with an adjustment disorder with mixed anxiety and depression mood and resolved post-traumatic stress disorder ("PTSD") and assessed a Global Assessment of Functioning ("GAF") score of 75. Dr. Cantey opined that Plaintiff had no restriction of his activities of daily living; slight difficulties in maintaining social functioning; and seldom had deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. She noted that Plaintiff discontinued medication in January and reported doing fine without it. Tr. 129.

On March 4, 2004, Plaintiff was examined at the Veterans Affairs Medical Center ("VAMC") by Dr. Faisal A. Chaudri, for complaints of chest pain on exertion. Tr. 304-305. An echocardiogram revealed mild mitral valve regurgitation and normal left and right ventricle systolic functioning. Tr. 320-321, 330.

Dr. Frank Laws, a cardiologist at the VAMC, performed a cardiac catheterization which revealed that Plaintiff had significant left main disease, complete occlusion of the ostial right coronary artery, and mild impairment in global systolic functioning with 3+ mitral regurgitation on April 18, 2008. Tr. 154-155, 179-181. On April 15, 2004, Plaintiff underwent coronary artery bypass grafting of three vessels with mitral valve repair at the VAMC in Atlanta, Georgia. Tr. 182-185. On July 12, 2004, Plaintiff was evaluated by J. Adger Brown, a vocational rehabilitation specialist, at the request of his attorney. Mr. Brown noted that Plaintiff reportedly misrepresented his symptoms so as to convince Dr. Cantey that he had recovered:

> I was struck by the fact that [Plaintiff] volunteered to tell me that although he believed himself to be under a considerable amount of psychological distress while seeing Dr. Cant[e]y, he elected to discontinue his medication, deny his symptoms, and intentionally try to convince Dr. Cant[e]y that he recovered so that he could be discharged and allowed to return to work.

Tr. 59. Mr. Brown wrote:

> Mr. Kelehear's self-report describes extensive and significant functional limitations in major areas of activity such as lifting, standing, walking, and sitting, that are not documented in the medical record, and are countered by Dr. Andrew Rhea's belief that this man is able to return to work as a truck driver without any physical limitations or restrictions. Likewise, the psychological evaluation gives this gentleman essentially a clean bill of health; although Mr. Kelehear advises me that he intentionally withheld problems and discontinued medication so as to be discontinued from psychological care.

Tr. 59.

On July 13, 2004, Dr. Laws noted that Plaintiff denied any exertional chest pain or shortness of breath. He reported that Plaintiff's blood pressure (140/67) was controlled. Tr. 294-297.

On July 14, 2004, Dr. Eric Paul Naumann, a family practitioner, began treating Plaintiff. He noted that Plaintiff was having incisional pain and some dyspnea. Tr. 289, 293. On July 20, 2004, Dr. Laws opined that, based on Plaintiff's progress, Plaintiff should be able to return to his previous level of functioning sometime within the near future. Tr. 289. In September 21, 2004, Plaintiff underwent a heart catheterization that indicated an occlusion. See Tr. 266. In October 2004, Plaintiff underwent stenting of the saphenous vein graft to his right coronary artery. Tr. 260, 279.

On October 11, 2004, Dr. Al Harley, a psychiatrist, performed a consultative psychiatric evaluation. Plaintiff complained of intrusive and recurrent thoughts about the December 2002 motor vehicle accident. Dr. Harley diagnosed adjustment disorder with mixed features of anxiety and depression, assessed a GAF score of 55, and stated that Plaintiff was moderately impaired in relating to others, performing daily activities, and thought processes. Tr. 254-256.

On November 12, 2004, Dr. Jeffrey Vidic, a State agency psychologist, opined that Plaintiff did not have a severe mental impairment. Tr. 385.

On December 28, 2004, Dr. Laws noted that Plaintiff continued to have episodes of retrosternal chest pressure, reported he had no energy, and had not seen any improvement in his symptoms since the stent was placed. Tr. 279. Dr. Laws assessed ischemic heart disease with chest pressure/discomfort and hypertension (moderate control). Tr. 282.

On January 18, 2005, Plaintiff underwent stress testing. The impression was that there was evidence to suggest fixed defects involving the inferior, inferolateral, and apical walls. Tr. 353, 356. An echocardiogram on January 25, 2005 revealed mild left ventricular enlargement, borderline LV

systolic function, estimated left ventricular ejection fraction of 50%, normal RV size and function, mild left atrial enlargement, annuloplasty ring noted in mitral valve, mild mitral regurgitation with no mitral stenosis noted, trace aortic insufficiency with no aortic stenosis noted, no tricuspid regurgitation noted, normal mitral inflow for age, and no pericardial effusion. Tr. 357-358.

Dr. F. K. Baker, a State agency physician, reviewed Plaintiff's medical records. On February 22, 2005, he opined that Plaintiff could perform light work, which did not involve climbing ladders, ropes, or scaffolds and did not require concentrated exposure to extreme cold or heat. Tr. 365-372.

On April 4, 2005, Dr. Naumann completed a form titled "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED ACTIVITIES." He stated that he had treated Plaintiff quarterly since July 14, 2004 and diagnosed Plaintiff with coronary artery disease, S/P MVR, stenting, S/P cervical spine surgery, PTSD, and depression. Dr. Naumann opined that Plaintiff's maximum ability to lift and carry on an occasional or frequent basis was less than ten pounds; he had the ability to stand and walk for less than two hours in an eight-hour day; he had no limit on his ability to sit; he could never twist, stoop (bend), climb stairs, or climb ladders; he could occasionally crouch; his reaching, handling, fingering, feeling, and pushing/pulling were not affected by his impairment; he had the non-exertional impairments of chronic fatigue, impairment of concentration, breathlessness, depression, chronic pain, and anxiety; his pain and other symptoms would not interfere with his attention and concentration to perform simple tasks if he was sedentary; he was capable of only low stress jobs; and his medication caused the side effect of drowsiness. Tr. 387-389. On July 20, 2005, Dr. Naumann noted that Plaintiff had a heart catheterization that indicated that both grafts were closed. Plaintiff had an ejection fraction of 40-45%. Tr. 396, see also Tr. 398.

On August 24, 2005, Dr. Laws diagnosed Plaintiff with coronary artery disease with stable angina and hypertension (controlled). He told Plaintiff to quit smoking. Tr. 392-395. On November 16, 2005, Plaintiff complained of poor sleep and shortness of breath, but no chest pain. He admitted he was still smoking a pack of cigarettes a day. Tr. 285.

Dr. Naumann diagnosed Plaintiff with coronary artery disease, hypertension, hyperlipidemia, tobacco abuse, congestive heart failure, PTSD, and depression on November 16, 2005. Tr. 390. On March 16, 2006, Dr. Naumann increased Plaintiff's dosage of Prozac and adjusted Plaintiff's medication to improve blood pressure control (Plaintiff's blood pressure was 161/112). Tr. 399-400. On March 21, 2006, Dr. Naumann wrote that Plaintiff's diagnoses included PTSD, depression, coronary artery disease, hypertension, hyperlipidemia, tobacco abuse, congestive heart failure, and iron deficiency anemia. He noted that Plaintiff continued to have chest pain with minimal activity and was being followed by mental health for depression and PTSD. Dr. Naumann opined that Plaintiff was unable to work a job at that time. Tr. 398.

Plaintiff alleges that: (1) the ALJ erred in failing to grant Plaintiff DIB where substantial evidence reveals that Plaintiff has no transferable skills; (2) the ALJ erred in attributing "traits" as "skills"; (3) the ALJ erred in finding that Plaintiff has skills transferable to light work; (4) the decision by the ALJ that Plaintiff is able to perform the walking and standing requirements of "light work" is not supported by substantial evidence; and (5) the ALJ erred in finding that Plaintiff did not have any mental impairments. The Commissioner contends that substantial evidence[1] supports

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to
> (continued...)

the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

    A.    <u>Motion for Remand for Consideration of New Evidence</u>

On March 29, 2007, Plaintiff filed a motion, pursuant to sentence six of 42 U.S.C. § 405(g) to remand this action to the Commissioner for consideration of new evidence. With his motion, Plaintiff attached a letter from James Ayers and a March 2007 form from Dr. Naumann titled "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED ACTIVITIES." Defendant contends that Plaintiff's motion should be denied because: (1) Dr. Naumann's March 2007 statement was not "material" and (2) Plaintiff has not shown good cause for why he did not submit the additional evidence to the ALJ or the Appeals Council.

James Ayers, a counselor with the VAMC, states:

Mr. Kelehear's PTSD symptoms are severe, he is still having nightly dreams and nightmares, and has flashbacks during the day. His anxiety level is extremely high, and his ability to tolerate social situations is very poor. He has panic attacks when he has to go out into public places especially the grocery store and other places that would not normally result in any social discomfort. Patient cannot tolerate being around others, and is very claustrophobic. His depression is severe and combined with the symptoms of PTSD prevent him from being able to function in the work place or in social situations. Mr. Kelehear is very reclusive, and his symptoms of irritability and angry outbursts cause him considerable problems in his relationships. I would classify Mr. Kelehear as permanently disabled regarding his ability to work. His medical records contain information that substantiate the severity of his problems and limitations.

---

<sup>1</sup>(...continued)
    justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

Plaintiff's Motion to Remand, Ex. A.

In his statement dated March 28, 2007, Dr. Naumann states that he treated Plaintiff from July 14, 2004 to present on a quarterly basis. He opined that during the entire period Plaintiff suffered severe limitations as a result of congestive heart failure, coronary artery disease, PTSD, hypertension, hyperlipidemia, and depression; Plaintiff's ability to stand and walk during an 8-hour day was less than 2 hours due to angina and chronic neck pain; Plaintiff's maximum ability to lift and carry on an occasional basis was less than ten pounds due to chronic neck pain; Plaintiff suffered from chronic fatigue, impairment of concentration, breathlessness, depression, chronic pain, and anxiety even without exertion; and Plaintiff suffered from restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace as a result of PTSD and some depression. Plaintiff's Motion to Remand, Ex. B.

Plaintiff fails to show that this action should be remanded to the Commissioner to consider the new evidence. Additional evidence must meet four prerequisites before a reviewing court may remand the case to the Commissioner on the basis of newly discovered evidence. These prerequisites are as follows:

1. The evidence must be **relevant** to the determination of disability at the time the application was first filed and not merely cumulative.

2. The evidence must be **material** to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented.

3. There must be **good cause** for the claimant's failure to submit the evidence.

4. The claimant must present to the remanding court at least a **general showing** of the nature of the new evidence.

Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985)(emphasis added).

Plaintiff's motion should be denied because he has not shown good cause for failing to submit the evidence while the case was before the ALJ or Appeals Council. Plaintiff has not shown that Mr. Ayer's letter is relevant as there is no indication that it relates to the period on or before the ALJ's decision (although it may be useful for a new disability application). See 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1). Plaintiff has not shown that the form from Dr. Naumann is material because it is cumulative of his April 2005 and March 2006 opinions that were before the ALJ. See Tr. 20, 387-389, 398. A claimant must establish that the evidence was "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983).

### B.     Mental Impairment/Severe Impairments

Plaintiff alleges that the ALJ erred in failing to find that his mental impairments were "severe" impairments. Specifically, Plaintiff argues that the ALJ should have given more weight to Dr. Harley's October 2004 consultative examination. Plaintiff also argues that the ALJ failed to note that Plaintiff remains on three powerful anti-depressants (Prozac, Wellbutrin, and Trazadone HCL) and that the ALJ's conclusion that Plaintiff has no mental impairments is contradicted by Plaintiff's long-term treatment with powerful anti-depressants. The Commissioner contends that the ALJ's determination that Plaintiff has no severe mental impairments is supported by substantial evidence. In particular, the Commissioner contends that the ALJ properly declined to give controlling weight to the opinion of Dr. Harley because Dr. Harley is a consultative physician, Plaintiff's treating psychologists indicated that Plaintiff did not have a severe mental impairment, and the State agency psychologist found that Plaintiff did not have a severe mental impairment.

It is the claimant's burden to show that he had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" means:

> The abilities and aptitudes necessary to do most jobs. Examples of these include --
>
> > (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> >
> > (2) Capacities for seeing, hearing, and speaking;
> >
> > (3) Understanding, carrying out, and remembering simple instructions;
> >
> > (4) Use of judgment;
> >
> > (5) Responding to supervision, co-workers and usual work situations; and
> >
> > (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

The ALJ's determination that Plaintiff's mental impairments were non-severe is not supported by substantial evidence. Although Dr. Cantey opined in March 2004 that Plaintiff had reached maximum psychological improvement, Plaintiff had received treatment for approximately one year with medications and biofeedback. Plaintiff did not seek further treatment from Dr. Rainwater or Dr. Cantey, but appears to have been treated later by Mr. Aker at the VAMC. See Tr. 276. On July 20, 2005, Dr. Naumann diagnosed Plaintiff with PTSD and depression and prescribed Prozac. Tr. 276, 396. On November 16, 2005, Dr. Naumann diagnosed PTSD and depression and

prescribed Prozac, Temazepam, and Trazadone. Tr. 390. That Plaintiff may have had a "severe" mental impairment at some time after he was treated by Drs. Cantey and Rainwater is also supported by the consultative examination of Dr. Harley in October 2004. Dr. Harley opined that Plaintiff had an adjustment disorder with mixed features of anxiety and depression which resulted in moderate impairment in Plaintiff's thought processes, ability to relate to others, and activities of daily living. Tr. 254-256.

    C.    <u>Residual Functional Capacity</u>

Plaintiff alleges that the ALJ erred in finding that he had the residual functional capacity ("RFC") to perform the walking and standing requirements of light work. He appears to argue that Dr. Naumann's findings and his own testimony (that he could not stand for more than fifteen minutes and could not walk more than 100 yards without stopping to rest) support his claim. The Commissioner contends that the ALJ's decision that Plaintiff could perform light work is supported by the findings of Dr. Baker.

The ALJ's determination that Plaintiff had the ability to perform the walking and standing requirements of light work (i.e. the ability to walk and/or stand for six hours in an eight-hour workday) is not supported by substantial evidence. Dr. Naumann, one of Plaintiff's treating physicians,[2] opined (on April 4, 2005) that Plaintiff could stand and walk for less than two hours in

---

[2]Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1988), and <u>Foster v. Heckler</u>, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. <u>See</u> <u>also</u> <u>Mitchell v. Schweiker</u>, 699 F.2d 185 (4th Cir. 1983). The court in <u>Mitchell</u> also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of
(continued...)

13

an eight-hour workday.³ The ALJ appears to have adopted the RFC of Dr. Baker, a non-treating, non-examining physician and discounted Dr. Naumann's opinion, stating that he was giving it only partial weight based on the overall medical evidence, including Dr. Naumann's and other treating physician's notes and diagnostic testing. See Tr. 20. The medical records reveal that Plaintiff had to undergo stent placement in October 2004, as he suffered from further cardiac complications after his bypass and mitral valve repair surgery. In December 2004, Dr. Laws (Plaintiff's treating cardiologist) assessed Plaintiff with ischemic heart disease with chest pressure and discomfort and hypertension with only moderate control. Tr. 282. Stress testing in January 2005 was abnormal. Tr. 353, 356. In July 2005, Dr. Naumann noted that two of Plaintiff's grafts were closed and Plaintiff had a diminished ejection fraction of 40-45%.⁴ Tr. 396. In November 2005, Plaintiff complained to Dr. Laws of poor sleep and shortness of breath. Tr. 285.

---

²(...continued)
time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

³The ALJ's decision to discount Dr. Naumann's March 2006 opinion that Plaintiff could not work at that time is supported by substantial evidence because the opinion does not indicate that Plaintiff's inability to work lasted or was expected to last for a continuous period of not less than twelve months. Further, Dr. Naumann's March 2006 opinion is at odds with his April 2005 opinion.

⁴Ejection fraction is:
the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end-diastolic volume, often expressed as a percentage. It is normally 65 [plus or minus] 8 percent; lower values indicate ventricular dysfunction.
Dorland's Illustrated Medical Dictionary 734 (30th ed. 2003).

14

D.      Skill/Trait

Plaintiff alleges that the ALJ erred in finding that he had transferable skills and claims that the ALJ erred in attributing his "traits" as "skills."[5] In particular, Plaintiff claims that "decision making on subjective criteria" and "completing reports" are traits, not skills.[6] The Commissioner contends that the ALJ properly found that Plaintiff had acquired skills from his past relevant work, based on testimony from the VE. Additionally, the Commissioner contends that a finding that Plaintiff had transferable skills is also supported by the findings of Mr. Brown in his consultative report.

Although the Social Security Regulations do not explicitly define a "skill," Social Security Ruling 82-41 defines a skill as:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

---

[5] Plaintiff also argues that the ALJ erred in finding that Plaintiff had skills transferable to light work because, according to the Dictionary of Occupational Titles ("DOT"), the duties of a security guard and store detective include the ability to apprehend suspects. The VE, in response to questioning from Plaintiff's attorney, stated that the jobs he identified would instead require the security guard or store detective to call the authorities if someone resisted or fled and not to actually make an arrest or apprehension. Tr. 435.

[6] Plaintiff contends that if he was found to have no transferrable skills he would be found disabled under the medical-vocational guidelines at Rules 201.06 and 202.06. These sections provide that a person of advanced age, with a high school education which does not provide for direct entry into skilled work, who has skilled or semi-skilled skills which are not transferable, and is limited to sedentary (Rule 201.06) or light (Rule 202.06) work should be found disabled under the medical-vocational guidelines.

SSR 82-41.

Here, the ALJ specifically identified, with testimony from the VE, Plaintiff's transferrable skills. Unlike the cases cited by Plaintiff,[7] the skills identified were not merely traits, but were linked to specific jobs (law enforcement and security jobs) where they were learned. The VE explained the skill of making decisions on the basis of subjective criteria which Plaintiff learned in his law enforcement job by observing behavior and tracking individuals entering and leaving the establishment and apprehending individuals. Tr. 433-434. Additionally, Plaintiff's consultative VE (Mr. Brown) also noted that Plaintiff had acquired a large number of skills, primarily from his jobs in law enforcement and truck driving.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to consider all of Plaintiff's impairments, determine his residual functional capacity based on all of the evidence, and to continue the sequential evaluation process.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and the case be remanded to the Commissioner for further administrative

---

[7]In Draegert v. Barnhart, 311 F.3d 468 (2d Cir. 2002), the Second Circuit found that the claimant's "skills" identified by the ALJ (ability to learn and apply rules and procedures, ability to use reason and judgment in dealing with all kinds of people, ability to think clearly and act quickly in an emergency, ability to keep physically fit, ability to make conclusions based on facts and personal judgment, and ability to change easily and frequently from one activity to another, were traits and not job skills because the ALJ and VE had not connected them to a particular work activity. Id. at 476. In Ellington v. Secretary of Health and Human Services, 738 F.2d 159 (6th Cir. 1984), the Sixth Circuit found that the "skills" (independence of judgment and responsibility for a work product) which the ALJ found had been acquired by the claimant in his job as a setter in the auto industry were too vague to constitute a particular skill. Id. at 161.

action as set out above. It is also RECOMMENDED that Plaintiff's motion to remand for new evidence (Doc. 9) pursuant to sentence six of 42 U.S.C. § 405(g) be denied.

                                            Respectfully submitted,

                                            s/Joseph R. McCrorey
                                            United States Magistrate Judge

January 18, 2008
Columbia, South Carolina